**STATE STREET TRUST CO. v. WHITE, Former Collector of Internal Revenue.**

**SAME v. CARNEY, Former Collector of Internal Revenue.**

**Nos. 6730, 6731.**

District Court, D. Massachusetts.

March 18, 1940.

Merrill G. Hastings, of Boston, Mass., for plaintiff.

Oliver W. Hammonds, Sp. Asst. to Atty. Gen. (Edmund G. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief), for defendants.

SWEENEY, District Judge.

These are two actions for the recovery of income taxes for the calendar year 1931. The reason for two actions is that there were two different Collectors in office during the time of the actual payments of the tax and deficiency. In all other respects, the cases will be treated as one.

A stipulation of facts has been signed by the parties and filed, and is adopted as my findings of fact, under Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Briefly, these facts disclose that the plaintiff's reported tax liability for the year 1931 was $15,339.03, which was paid during the year 1932. Upon a recomputation of the taxable income for 1931, the Commissioner determined an additional liability, and made an assessment against the plaintiff in the amount of $11,843.42, which, together with interest in the amount of $1,424.55, was paid during 1934.

In filing its return, the plaintiff had taken as a deduction the sum of $70,309.63 by reason of losses alleged to have been sustained in connection with a collateral loan made by it. It was this loss which the Commissioner disallowed in making his recomputation. After the deficiency assessment was paid, the plaintiff seasonably filed claims for refund which were denied.

The loss for which the plaintiff claimed a deduction arose out of a loan by the plaintiff to Childs, Jeffries & Co., Inc., in the amount of $352,089.63, which was secured by 14,089 shares of the stock of the National Protective Company. This loan was made in conjunction with similar loans by other banks. When the note matured, by an arrangement between the parties, the bank surrendered the note to Childs, Jeffries & Co., Inc., and in return took over the 14,089 shares of stock. At the time that this transaction was consummated, the debtor had unsecured liabilities of approximately $975,000, and assets worth about $35,000. The plaintiff set up the stock on its books in an account designated "Other Stocks and Bonds" in the amount of $352,089.63. Later, during the same year, it wrote off $175,000 of this amount. There were subsequent write-offs on the same stock in excess of $50,000.

Paragraph XI of the stipulation filed by the parties reads as follows: "The fair market value on January 13, 1931, of the 14,089 shares of the National Protective Companies taken over by the plaintiff as hereinbefore set forth in paragraph VII hereof was $9.00 per share."

### Conclusions of Law

The decision in this case rests on the stipulation of the fair market value of the National Protective Company stock on January 13, 1931, the date when the bank took it over. In the absence of this stipulation, a reading of the agreement between the Childs, Jeffries & Co., Inc., and the State Street Trust Company would indicate that the bank was taking over the stock of the National Protective Company at a valuation of approximately $25 per share. The wording of the letter addressed by the debtor is that: "This arrangement has been made in place of a sale of stock in the open market or on the auction board for the reason that it is believed that a sale in the open market or on the auction board of such a large block * * * would be unlikely to yield proceeds adequate to cover the obligations", and indicates the intent to cover the obligations of the note by the delivery of the stock. Such at least is an inference to be drawn from the language used.

But the defendants have stipulated that the stock which the plaintiff received did not in substance have a value that even approximated the face of the note. They have stipulated that its value on the date it was taken over was $9.00 per share. Boiled down to its simplest form the facts and the stipulation disclose that the bank made a purchase of 14,089 shares of the National Protective Company stock from its debtor. In acquiring that stock the bank surrendered the debtor's note which had a face value of $352,089.63. The 14,089 shares of stock at $9.00 per share were worth but $126,801 on the date that the bank acquired them. Thus, the bank sustained a loss of the difference between the face of the note and the value of the stock. Sections 23(f) (g) and 113 of the Revenue Act of 1928, 26 U. S.C.A. Int.Rev.Acts, provide for the determination of such losses.

Treasury Regulations 74, Article 193, dealing with "Uncollectible deficiency upon sale of mortgaged or pledged property", in the second sentence of that paragraph, reads as follows: "where the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property * * and the fair market value of the property." Thus both the Act and the Regulations promulgated thereunder provide for the deduction of the loss which the plaintiff suffered. The plaintiff's loss, measured by Article 193, would be the difference between the amount of the obligations, namely, $352,089.63 and the stipulated fair market value of the property $126,801, which would be $225,288.63. It seems clear that the Commissioner should have allowed the deduction of that loss.

The plaintiff is therefore entitled to judgment in an amount to be agreed on by the parties. In the event that agreement cannot be reached, the question of the amount of the judgment may be resubmitted to the court.

The defendants' requests for conclusions of law are denied, except insofar as request #2 relates to a conclusion that the agreement of January 13, 1931, was in law and fact a purchase of stock pledged as security for the debt, which is allowed.

The defendants' motion for judgment is denied.